**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **JOVON DORSEY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24 CV 165** |
| | ) | |
| **SHERRY LAPOINTE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION and ORDER**

Before the court is defendant Sherry Lapoint's motion for summary judgment on plaintiff Jovon Dorsey, Jr.'s claims of unconstitutionally inadequate medical care under the Eighth and Fourteenth Amendments. (DE # 23.) For the reasons set forth below, the motion is granted.

## I. BACKGROUND

In August of 2022, Dorsey was an inmate at the Miami Correctional Facility. (DE # 10-1 at 1.) Dorsey's right wrist was injured on August 2, 2022, during an incident where he alleged staff used excessive force. (DE # 10-1 at 2.) He later developed back and shoulder pain, which he attributes to complications from his wrist injury. (DE # 23-2 at 7-8.) Dorsey claims that he received unconstitutionally deficient medical care for his August 2 wrist injury, and that the deficiency caused or exacerbated his subsequent back and shoulder injury. (DE # 10 at 1-2.)

Around noon on August 2, Dorsey reported to the Miami Correctional Facility medical unit with complaints of this wrist injury. (DE # 10 at 2.) Dorsey claims that he

was told by a guard that Nurse Lapointe had refused to see him. (DE # 10 at 2.) For her part, Nurse Lapointe claims that she was not made aware of Dorsey's injury at that time and only learned of it when he returned for treatment the following day. (DE # 23-1 at 4.) Regardless, Nurse Michael Nevil saw Dorsey on the evening of August 2. (DE # 23-2 at 1-2.) Records of the visit indicate that Dorsey's wrist was sensitive and slightly swollen but otherwise normal. (DE # 23-2 at 2.) Nurse Nevil determined that Dorsey had suffered a superficial injury that did not require immediate treatment. (DE # 23-2 at 2.)

The following morning, Dorsey returned to the medical wing where Lapointe examined his wrist. (DE # 23-2 at 3-4.) Lapointe came to the same conclusions as Nurse Nevil, reporting that Dorsey had full sensation and movement in both wrists, no back pain, and no symptoms to indicate anything beyond a superficial injury. (DE ## 23-1 at 2, 23-2 at 3-4.) Lapointe instructed Dorsey to rest and submit a health care request if his wrist did not improve. (DE # 23-2 at 4.) Lapointe did not hear from Dorsey about his wrist injury after the August 3 visit. (DE # 23-1 at 3.)

Two months later, on October 16, Dorsey returned to the medical wing with complaints of back and shoulder pain. (DE # 23-2 at 7-9.) Records of that visit show that Dorsey believed the pain was connected to his earlier wrist injury. (DE # 23-2 at 9.) He has since been prescribed physical therapy and a topical ointment for his back and shoulder pain. (DE # 23-2 at 11.)

Dorsey filed a complaint in federal court, which he later amended, alleging constitutional violations by Lapoint and others. (DE ## 1, 10.) The court dismissed all

claims against all defendants, except Lapoint. (DE # 11.) Lapoint then moved for summary judgment under Federal Rule of Civil Procedure 56. (DE # 23.) Dorsey responded (DE # 28), Lapoint replied (DE # 31), and the motion is now ripe for ruling.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment against a party who, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, the non-moving party must identify specific facts that establish the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rely on allegations or denials in its own pleadings, but must present new evidence in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

A dispute about a material fact is only genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The court must construe all facts presented on a motion for summary judgment

in favor of the non-moving party, and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

**III. DISCUSSION**

Prisoners are entitled to adequate medical care under the Eighth and Fourteenth Amendments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner who alleges unconstitutionally deficient care must show that they had an objectively serious medical need, and that the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A delay in care may constitute deliberate indifference to an inmate's medical condition. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016). "[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

When an inmate makes a delay-of-care claim under the Eighth Amendment, they must present "verifying medical evidence" from which the jury could infer that the delay itself caused some degree of harm beyond that caused by the underlying condition. *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) (citing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)). The plaintiff's medical records, treatment, and testimony are sufficient verifying medical evidence when they provide a basis for the jury to infer that the delay in care had a detrimental effect. *Barnes v. Wexford Health Sources, Inc.*, 177 F.4th 825 (7th Cir. 2026).

The Seventh Circuit first articulated its standard for verifying medical evidence in *Williams.* 491 F.3d at 716. The plaintiff in *Liefer* lost consciousness and fell down a

flight of stairs after prison guards ignored his repeated complaints of chest pain and numbness. *Id.* at 712-13. In support of his delay-of-care claim, the plaintiff offered medical records showing that he had elevated blood pressure, an abnormal EKG, and severe chest pain when he eventually arrived at the emergency room, but that his symptoms subsided almost immediately after receiving treatment. *Id.* at 715. The court affirmed the jury verdict for the plaintiff, holding that medical records can support an inference that delayed treatment caused unnecessary suffering when they show that the treatment actually eased the plaintiff's suffering once it was provided. *Id.* at 716.

Additionally, evidence must establish more than just the plaintiff's "diagnosis and ultimate treatment" to be sufficient verifying medical evidence. *Barnes*, 177 F.4th at 834. In *Barnes*, the plaintiff argued that his doctor had unconstitutionally delayed his pelvic floor therapy and hemorrhoid surgery, leading to prolonged pain and suffering. *Id*. In support of his claim, the plaintiff offered evidence showing that he had been diagnosed with a prolapsed hemorrhoid, and that the defendant had treated his condition with fiber supplements before referring him for therapy and surgery. *Id.* at 833-34. Unlike in *Liefer*, there was no evidence of a rapid recovery following the delayed treatment, and thus no basis for an inference that earlier treatment would have avoided any harm. *Liefer*, 491 F.3d at 715; *Barnes*, 177 F.4th at 831, 834. Upholding summary judgment for the defendants, the court held that evidence of a plaintiff's "diagnosis and ultimate treatment . . . alone cannot evidence harm stemming from the delay itself." *Barnes*, 177 F.4th at 834.

The Seventh Circuit has upheld summary judgment for defendants when the plaintiff's medical records failed to show that earlier or different treatment would have provided a benefit, and the plaintiff offered no additional evidence of injury caused by a delay. *See Peters*, 100 F.3d at 1240; *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033-34 (7th Cir. 2019). The plaintiff in *Peters* claimed that his Eighth Amendment rights were violated when a prison guard refused to help him following an assault and rape by another inmate, delaying a medical evaluation by one hour. *Peters*, 100 F.3d at 1240. Records of that evaluation showed that he had suffered minor injuries and did not require immediate treatment. *Id.* at 1241. Because the plaintiff's medical records failed to show that he would have benefitted from earlier medical treatment, the court held that they could not support an inference that the delay caused any harm. *Id*. And because the plaintiff had not presented any other evidence of an injury caused by the delay, it upheld summary judgment for the defendants. *Id*.

The court made this point more explicitly in *Gabb*. 945 F.3d at 1034. There, the plaintiff claimed that his doctor unconstitutionally delayed pursuing a more aggressive course of treatment for his back pain. *Id* at 1033. He submitted medical evidence showing that his condition deteriorated over the relevant period, but no evidence that a different course of treatment would have provided a benefit. *Id* at 1033-34. The court upheld summary judgment for the defendants, explaining that "[t]he lack of evidence of what the 'better' treatments were and whether they would have been effective would leave a jury entirely to its own imagination about what could have been done." *Id.* at 1034.

Here, Dorsey has not presented sufficient verifying medical evidence to survive summary judgment. Like the plaintiff in *Barnes*, he presents only his own statements about his "diagnosis and ultimate treatment," with no evidence to support an inference of harm caused by a delay of care. *Barnes*, 177 F.4th at 834. As the court explained in *Barnes*, that is not sufficient verifying medical evidence to overcome summary judgment. *Barnes*, 177 F.4th at 834.

Furthermore, Dorsey's medical records provide no indication that earlier treatment could have provided any benefit. Nurse Nevil examined Dorsey's wrist on the day of the alleged incident, and Lapointe examined it the following day. (DE # 23-2 at 1-4.) Records of both examinations suggest that Dorsey suffered a superficial wrist injury that did not require immediate treatment. (DE # 23-2 at 1-4.) The only treatment he received after these examinations was an instruction to rest and come back if his symptoms persisted. (DE # 23-1 at 2.) This is very different from *Liefer*, where the plaintiff's records showed that his suffering subsided almost immediately after receiving medication. *Liefer*, 491 F.3d at 715. Like the plaintiff in *Peters*, Dorsey's records show that he did not miss out on any necessary treatment during the delay. *Peters*, 100 F.3d at 1241; DE # 23-2 at 1-4. Put simply, Dorsey's medical records from the time of the injury do not permit a reasonable inference that earlier treatment would have improved his condition. Accordingly, they cannot provide a basis for a jury to infer that a delay in treatment caused him harm.

Dorsey's medical records also contain information regarding his visits concerning the trigger point injury in his shoulder, two months later. (DE # 23-2 at 7-

11.) These records confirm that Dorsey believed his trigger point injury was caused by the alleged incident and connected to his wrist injury. (DE # 23-2 at 7-11.) Like the plaintiff in *Gabb*, however, Dorsey has not presented any evidence from which a jury could infer that a different course of treatment could have prevented that outcome. *Gabb*, 945 F.3d at 1034. Because Dorsey has not presented evidence from which a jury could infer that earlier treatment would have eased his suffering or provided him any benefit, he cannot overcome summary judgment by pointing to his medical records related to his shoulder injury, either. *Id*.

Nor is there any evidence to support an inference that Lapointe provided unconstitutionally inadequate care by failing to identify and treat Dorsey's trigger point injury while examining his wrist on August 3. To establish deliberate indifference, a plaintiff must present evidence that the defendant actually knew of a particular risk to the patient's health or well-being but chose to disregard it. *Farmer*, 511 U.S. at 837. However, "'where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference.'" *Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 635 (7th Cir. 2024) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021)).

The plaintiff in *Petties* suffered a ruptured Achilles tendon, and claimed that prison officials violated his right to adequate medical care by refusing to immobilize his ankle or refer him for surgery. 836 F.3d at 726-27. Evidence showed that the defendant knew about the injury and understood that appropriate care required immobilization and surgery, but he inexplicably declined to order that treatment. *Id*. at 731-33. The

Seventh Circuit held that this evidence was sufficient to survive summary judgment because it showed that the defendant had actual knowledge of the plaintiff's condition and refused to exercise appropriate medical judgment in treating it. *Id*. at 733.

In another case, a plaintiff fell from his bunk and injured his hand. *Armstead v. Marandet*, No. 20-2891, 2021 WL 5492983, at *1 (7th Cir. Nov. 23, 2021). Records of his nurse visit following the injury showed that he had full use of his hand at the time and that medical staff saw no reason to order an x-ray. *Id*. at *2. Two months later his hand had gotten worse, so medical staff ordered an x-ray that showed it had been broken. *Id*. The plaintiff claimed that the failure to order an x-ray during his initial visit violated his right to adequate medical care. *Id*. The court upheld summary judgment for the defendant because the evidence showed that he did not have actual knowledge of the fracture and exercised appropriate medical judgment in determining an x-ray was unnecessary. *Id*. at *3.

The facts of this case line up more closely with *Marandet* than with *Petties*. *Id*. Lapointe examined Dorsey's hands, determined that he had suffered a superficial injury, and instructed him to rest and report back if symptoms worsened. (DE ## 23-2 at 3-4, 23-1 at 2.) Unlike *Petties*, there is no evidence from which the court might infer that Lapointe was aware of any risk to Dorsey's health beyond that superficial injury. Records of the August 3 visit show that Dorsey reported no complaints of back pain and that he had full sensation and range of movement in both hands. (DE # 23-2 at 4.) Dorsey has pointed to no evidence from which a reasonable inference may be inferred that Lapointe did not exercise proper medical judgment in diagnosing him with a

superficial injury and treating him accordingly. (DE # 23-2 at 4.) Accordingly, his claim cannot survive summary judgment. *Petties*, 836 F.3d at 733.

## IV. CONCLUSION

For the reasons stated above, defendant Sherry Lapoint's motion for summary judgment is **GRANTED.** (DE # 23.) Because all claims have been resolved against all defendants in this case, the Clerk is instructed to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of Sherry Lapointe, William Hyatte, and Mr. Gapski; and against plaintiff Jovon Dorsey, Jr., who shall take nothing by way of his complaint.

**SO ORDERED.**

Date: September 14, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT